The parties hereto have agreed to the following stipulation of facts:
"1. On February 23d 1933, the Jefferson Trust Company was placed under the restrictions of the "Altman act" by the commissioner of banking and insurance. P.L. 1933 ch. 27. *Page 114 
"2. On that date and for some time prior thereto, the petitioners, Joseph Millstein and Morris Millstein, had the following deposits in said bank:
 In checking account .......................... $841.07
 In special savings account ................... 5,414.63
 _________
 $6,255.70

"3. While the Jefferson Trust Company was operating under the "Altman act," on February 27th, 1933, the petitioners opened another checking account in the Jefferson Trust Company and at various intervals from June 12th, 1933, until March 13th, 1934, the petitioners overdrew said account in different amounts, which checks were honored by the bank and said overdrafts total $2,064.93.
"4. On September 30th, 1935, the commissioner of banking and insurance took over the Jefferson Trust Company for liquidation because of insolvency pursuant to the provisions of the "Act concerning trust companies," as amended (P.L. 1931 ch. 255), at which time there appeared on the books of the bank the deposits and overdrafts as aforesaid.
"5. On October 21st, 1935, the commissioner of banking and insurance petitioned the court of chancery of New Jersey to take jurisdiction of the administration of the trust and appropriate orders were duly entered and the court now has jurisdiction over the administration by the commissioner.
"6. On February 28th, 1936, the petitioners filed with the commissioner of banking and insurance a proof of claim for $4,190.77, being the amount of the deposits less the overdrafts, thus:
 Deposits (checking and savings) ............ $6,255.70
 Overdrafts ................................. 2,064.93
 _________
 $4,190.77

"7. Until this date dividends of fifteen per cent. have been declared and allowed by the court of chancery on claims filed and allowed.
"8. Petitioners filed a petition claiming that dividends be paid to them on their claim of $4,190.77 amounting to *Page 115 
$628.61 and to any future dividends which may be allowed by the court on the ground that the overdrafts should be set-off against the deposits.
"9. The commissioner of banking and insurance refuses to pay the dividend on the ground that petitioners are not entitled to set-off the overdrafts against the deposits; that the petitioners are creditors for the full amount of their deposits in the sum of $6,255.70 and the petitioners are debtors to the bank for the overdrafts of $2,064.93."
Chapter 255 of the laws of 1931 permits the commissioner of banking and insurance to exercise the right of set-off. While the petitioners overdrew their account to the extent of $2,064.93, they had on deposit in other accounts, in the same bank, the sum of $6,255.70. The bank, at no time, stood to lose the amounts of the overdrafts. It could hold the sums on deposit for the amount of the overdrafts. The drawers were liable to the bank. No fraud, or apparent malicious conduct, was involved. Banks are required, and for their own safety are compelled, to know at all times the balance to the credit of each individual customer, and they accept and pay checks at their own risk and peril. If, from negligence, or mistake, banks improvidently pay checks or drafts when the account of a customer is not in condition to warrant it, the bank must look to the customer for rectification, not to the person to whom the check is paid. First National Bank v.Devinish, 15 Col. 229; 25 Pac. Rep. 177.
According to the general view, the payment of an overdraft by a bank amounts to a loan to its depositor, which is recoverable in the absence of an equitable defense. Prowinsky v. SecondNational Bank (D.C.), 265 Fed. Rep. 1003; 12 A.L.R. 358. In annotation to the latter is cited: "Jack v. Moyer, 187 Pa. 87;40 Atl. Rep. 1013, where the court, in sustaining an action on an overdraft, says that the action on an overdraft raises the question as to the entire account between the bank and its customer, and that, if upon the whole account there results a balance in favor of the bank as against the depositor, the cause of action would arise as for a loan or advancement of money to the extent of the debit balance." *Page 116 
The cases in this state are generally to the effect that the right of set-off applies between a depositor and the commissioner of banking and insurance, who takes over a bank for liquidation.Roseville Trust Co. v. Barney, 89 N.J. Law 550. And where a depositor is insolvent, the bank may set off against the deposit.Rogosin v. City Trust Co., 107 N.J. Eq. 79; Leech v.Campbell Duncan, Inc., 103 N.J. Eq. 119; Singac Trust Co. v.Totowa Lumber, c., Co., 112 N.J. Law 99; Feick v. Hill BreadCo., 89 N.J. Eq. 189.
A debtor of an insolvent bank whether his indebtedness has accrued or not at the time of insolvency may set off his indebtedness to the receivers of the bank and is entitled to a decree. Neptune City v. Seacoast Trust Co., 116 N.J. Eq. 357;Van Wagoner v. Paterson Gas Light Co., 23 N.J. Law 283.
It is my opinion that the claim of the petitioners should be allowed, and that they are entitled to a dividend on the sum of $4,190.77, which is the difference between the amounts they had in the bank as deposits and the overdrafts. *Page 117